# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **IN RE:** | **CASE NO.  15-08986 BKT** |
| **HOLLAND GROUP PORT INVESTMENT(MAYAGUEZ) INC.** | **CHAPTER 7** |
| **Debtor(s)** | **FILED & ENTERED ON 09/27/2019** |

## OPINION & ORDER

Before the court's consideration is Creditor Mayaguez Port Commission's (hereinafter "MPC") *Motion for Summary Judgment* [Dkt. No. 122]; MPC's *Statement of Material Facts in Support for the Mayaguez Ports Commission Motion for Summary Judgment* [Dkt. No. 123]; the appointed Chapter 7 Trustee Roberto Roman Valentin's (hereinafter "Trustee") *Motion for Summary Judgment* [Dkt. No. 124]; the MPC's *Opposition to "The Chapter 7 Trustee's Motion for Summary Judgment"* [Dkt. No. 128]; the Trustee's *Opposition to MPC's Motion for Summary Judgment* [Dkt. No. 131]; and MPC's *Motion Submitting Certified Translations* [Dkt. No. 137]. This controversy stems from an objection to MPC's claim number 13 filed by the Trustee and the related motions [Dkt. No.'s 90, 91, 104], and this court's *Minute Entry and Order* set forth at the Pre-Trial Conference hearing held on January 16, 2019 [Dkt. No. 114].

**FACTS:**

On November 12, 2015, the Debtor filed a voluntary petition under the provisions of chapter 7 of the Bankruptcy Code. [See Dkt. No. 1]. Prior to the petition date, the Debtor and the MPC,

had executed a Lease and Development Agreement (hereinafter "LDA") for the operation of the Mayaguez Port Facilities. [See Dkt. No. 123, Exh. E]. The MPC is a public corporation of the Commonwealth of Puerto Rico, organized and existing under Act 10 of May 8, 1959, as amended, 23 L.P.R.A. §§ 551 *et seq*., and pursuant to Resolution No. 81, Series 2001-2002, issued by the Municipal Legislature of the City of Mayaguez on May 15, 2002, and to Executive Order No. 2003-77, issued by on December 18, 2002. See 23 L.P.R.A. § 553. The purpose of the MPC is to "develop, approve, acquire, construct, manage, own, operate and administrate all port businesses" of the Mayaguez Ports Facilities and, among other things, rent any services and property, real and personal, as the Port Commission deems necessary or convenient in connection with its activities. 23 L.P.R.A. §555.

On June 13, 2013, the Debtor filed a complaint seeking injunctive relief against the MPC to stop the MPC's intention to terminate the LDA, due to Debtor's failure to comply with the payment of the annual minimum rent contemplated in the LDA.[1] The MPC answered the complaint denying Debtor's allegations and counter-claimed for the accrued rent owed by Debtor, penalties, and attorney fees. After a hearing held on May 19, 2014, the state court rendered judgment on May 20, 2014 (hereinafter "Judgment") and determined that Debtor owed the MPC back-rent in an amount of $167,658.81, $8,382.94 in penalties, and $15,000.00 in attorney's fees, and further declared that the MPC's termination of the LDA was in accordance with applicable law. [See Dkt. No. 123, Exh. H]. Accordingly, the state court ordered the eviction of the Debtor from the port facilities within twenty (20) days. On May 20, 2014, Debtor began the process of legally surrendering the port facilities to the MPC, but it appears that the legal transfer was not completed due to an issue regarding the turnover of the port's facilities securities plan.

---

[1] Commonwealth of Puerto Rico, Court of First Instance Mayaguez, Civil No. ISCI201300800.

MPC's Claim number 13-2 in the total amount of $1,752,000.98 can be divided as follows: (i) the judgment entered for the MPC, in the aggregate amount of $191,041.75; (ii) penalties imposed to Debtor under the LDA for filing untimely, defective or incomplete quarterly reports, or not filing reports at all, pursuant to Section 6 of the LDA, in the aggregate amount of $1,301,866.00; (iii) the cost's incurred by the MPC for the creation of the Mayaguez Ports Facilities Security Plan in the amount of $3,475.00; and (iv) the costs for repairs and maintenance of the port facilities which Debtor failed to perform in the aggregate amount of $255,618.23.

**THE PARTIES' POSITIONS:**

The Trustee's objection to the MPC's Claim number 13-2 requests this court to reduce the claim to the amount of $191,041.75 awarded in the afore-mentioned civil case. The Trustee states that the claims for repair and maintenance of the leased premises are contingent and non-liquidated, and that once the state court adjudicated the civil case on May 20, 2014, the MPC is precluded from adding and imposing more liabilities on the Debtor post judgment. The MPC has not offered any analysis or documentation in support of its allegation that the rest of the Claim no. 13-2 amounts are liquid, non-contingent and undisputed. The Trustee contends that if the basis for the MPC's claim is the violation of the LDA, then MPC must provide all judgments, determinations, stipulations or covenants which support the amounts included in Claim number 13-2.

Moreover, in response to the allegations that the Debtor failed to comply with the requirements established at Section 8.3.8 of the LDA, [2] the Trustee counters that the MPC itself

---

[2] Section 8.3.8 of the LDA describes the "handback" requirements between the parties and delineates the procedure to adjudicate costs and expenses to the lessee.

did not comply with any of the terms and requirements established in said section. Section 8 of the LDA established the process to follow in case of a termination of the contract. Specifically, that an inspection must be held in order to determine the condition of the premises. The MPC has not provided evidence regarding their compliance with the pertinent sections of the LDA. The Trustee includes two additional arguments, the lifting of the stay and the applicability of the doctrine of judicial estoppel which will be discussed below.

In turn, the MPC submits that it complied with the handover requirements, but it was the Debtor who did not comply with the procedures established in Section 8.3.8 of the LDA. In addition, Debtor appealed the Judgment and continued to disregard the same, until the bankruptcy filing. The Order for Relief stayed all proceedings in the state court. While the Judgment included penalties and sanctions for Debtor's failure to pay the minimum rent provided for in the LDA, that was the only issue that could be discussed in the injunctive relief proceeding. The Judgment was entered in a special proceeding that considers only the eviction of the tenant for failure to pay, and the only evidence the tenant can provide to stop the eviction is evidence of payment.

The additional penalties and costs contained in Claim number 13-2 are for Debtor's failure to fulfill its obligations as established in Section 6.1 of the LDA. Following the eviction, the MPC had to incur in the cost of the new Security Plan, address the damages, and repair the deteriorated facilities which were not in compliance with Homeland Security, Safety and Security for workers and passengers using the port facilities pursuant to an inspection by the U.S. Customs and Border Protection. These costs were incurred after the entry of the state court Judgment.

**SUMMARY JUDGMENT STANDARD:**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

-4-

56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." Patco Constr. Co. v. People's United Bank, 684 F.3d 197, 206-07 (1st Cir. 2012).

**LEGAL ANALYSIS:**

After reviewing the parties' arguments, and the relevant law, this court finds that there exists a genuine issue as to a material fact, specifically what actions did the parties take in order to comply with the LDA once it was terminated by the Judgment. This determination of fact precludes the court from ruling on the summary judgment motions presently before it. As such the MPC's *Motion for Summary Judgment* [Dkt. No. 122] and the Trustee's *Motion for Summary Judgment* [Dkt. No. 124], are hereby DENIED.

However, the court's determinations do not end here. The Trustee's motion includes two additional legal arguments; (1) the MPC is judicially estopped from adding and imposing more liabilities on the Debtor as a result of the state court Judgment. The MPC failed to request the alleged damages in the state court case, and there is no other determination by any court to impose further liability on the Debtor. The MPC should be impaired because of judicial estoppel; and (2) The MPC failed to seek an order from this court to lift the stay in order to liquidate any interests in the state court, to seek the enforcement of section 8 of the LDA, or seek a final determination or judgment regarding the MPC's authority to impose such fines and penalties upon the Debtor. The court finds these two arguments to be without merit. They are incompatible premises.

The first argues that the state court Judgment considered all the disputes between the parties and ruled accordingly, therefore the judicial estoppel doctrine bars the MPC from asserting an inconsistent position in this proceeding. The second, argues that the MPC should have pursued a

lift of stay in the bankruptcy case, in order to obtain a state court judgment imposing fines and penalties for breach of section 8 of the LDA. This court has reviewed the state court Judgment and determines that it only adjudicated the eviction of the Debtor from the port facilities due to the lack of payment of the minimum annual rent. The penalty awarded of $8,382.94, which represents five (5) percent of the rental balance owing at the time the Judgment was entered, was applied specifically to the lack of payment. The state court further ruled:

> Regarding the ORDER issued on April 29, 2014, of which notice was personally served on May 13, 2014 by Marshal Héctor J, Hernández, in which this Court orders Holland Group Port Investment (Mayagüez), Inc. to keep Mr. Antonio Jacobs in his duties as Facility Security Officer of the Port of Mayagüez at its own expense and to cooperate with the Mayagüez Port Commission, as required under section 8.7 of the Lease and Development Agreement, such order remains in full force and effect until such time as the parties inform the Court, by means of a motion, that the full, legal and physical delivery of the Port of Mayagüez has been completed.
> …
> With the sole purpose of observing the faithful compliance with the matters decided, awarded and ordered herein, the parties are summoned to an informative hearing to be held on June 25, 2014 at 2:00 p.m.

CERTIFIED TRANSLATION May 20, 2014 Judgment, Pgs. 8-9 [Dkt. No. 123, Exh. H].

The Judgment left the matter of the turnover of the facilities "open" pending a motion by the parties. From the record of the bankruptcy case and the exhibits filed by the parties, the current status of the state court case cannot be ascertained. The MPC was not obligated to file a lift of stay request with the court. The filing of Claim number 13-2 is sufficient to put this matter squarely within this court's jurisdiction.

11 U.S.C. Section 502(a) provides that a proof of claim filed under § 501 "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). When a party in interest objects to a proof of claim, "the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow

-6-

such claim in such amount," unless one of statutory grounds for disallowance applies. 11 U.S.C. § 502(b).

11 U.S.C. Section 502 (b)(l) provides that if an objection to a claim is made, the court shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that such claim is unenforceable against the debtor under any agreement or law for a reason other than because such claim is contingent or unmatured. Section § 502(b) (6) refers to damages suffered by a lessor for the termination of a lease.

Pursuant to Fed. R. Bankr. P. 3001(f), bankruptcy courts have held that a proof of claim constitutes *prima facie* evidence of the validity and amount of the claim; and any objection to it must be made by presenting "substantial evidence" to rebut the presumption of validity of a claim timely filed.[3] If the objection is substantial, the claimant "…is required to come forward with evidence to support its claims … and bears the burden of proving its claims by a preponderance of the evidence." Tracey v. United States, 394 B.R. 635, 639 (B.A.P. 1st Cir. 2008) (citing In re Organogenesis, Inc., 316 B.R. 574, 583 (Bankr. D. Mass. 2004)).

The question of whether Claim number 13-2 should be allowed hinges largely on the existence of Debtor's obligations to the MPC under Puerto Rico law. State law specifies the remedies available to the nonbreaching party when a contract is breached, to the extent state law does not contravene the Code. Indeed, penalty clauses in a debtor's contracts are controlled by Puerto Rico law, which are governed by Articles 1106 through 1109 of the Puerto Rico Civil Code. 31 L.P.R.A. §§3131-3134.

---

[3] American Express Bank, FSB v. Askenaizer, 418 B.R. 495, 504 (B.A.P. 1st Cir. 2009); In re Hemingway Transport, Inc., 993 F.2d 915, 925 (1st Cir. 1993) (1st Circuit Court has held that "[t]he interposition of an objection does not deprive the proof of claim of presumptive validity unless the objection is supported by *substantial evidence*."); In re Empresas Omajede, Inc., 537 B.R. 63, 92 (Bankr. D.P.R. 2015); In Re Santiago Ruiz, 2017 WL 3084379.

As such, the court will adjudicate this matter and determine the amounts owed, if any, in penalties and repair costs as a result of the compliance or lack thereof with the LDA by the parties in the legal and physical transfer of the port facilities. The Clerk shall schedule an evidentiary hearing forthwith.

SO ORDERED

In San Juan, Puerto Rico, this 27th day of September, 2019.

Brian K. Tester
U.S. Bankruptcy Judge